THOMAS A. SNOW *versus* PRESIDENT, DIRECTORS & CO. OF THE THOMASTON BANK.

If the transfer of bank stock, for the purpose of making the owner a witness, be unconditional, the contingency that he might again become the owner of the same, is not such an interest as goes to his competency.

The entries by the cashier, of the appropriation of money which the bank was to apply to the payment of notes belonging to it, are admissible to prove the fact of such appropriation — they having been shown to the party interested without objection on his part.

The receipt by a creditor of collateral security, does not prevent him from making the principal security available by suit or in any other way.

THIS was an action of assumpsit, in which the plaintiff sought to recover $600, for the transportation of money between Thomaston and Boston, for a series of years, at the rate of $100 *per annum,* and upon a special contract made by the defendants.

It appeared in evidence on the part of the plaintiff, who was the master of a packet at Thomaston, that he transported a large amount of money in bills and specie for the defendants, between Thomaston and Boston, nearly every trip during a period of six years.

The plaintiff further produced a contract of the defendants, dated Jan. 20, 1838, by which it appeared that on that date he had deeded certain real estate to the Thomaston Bank, " for the better security of said bank "— he being indebted to the bank as principal on five notes, to the amount of the sum of $1693, in the whole; and that the defendants agreed, on condition that the plaintiff should pay the first note in ten days and the two last notes within. ninety days, and the remainder in quarterly payments, at certain specified times, &c. &c.— that they would re-convey the premises,. deeded as before stated — and it was further agreed, " that provided thirty days shall expire after the time of any payment, then the said President, Directors & Co. agree and promise to sell the premises aforesaid at public auction, and appropriate the proceeds of said debts and costs and incidental expenses, and should there be a balance remaining, to pay the same to the said Thomas A. Snow, his executors," &c.

The defendant introduced the following receipt:

Thomaston Bank to Thomas A. Snow,          Dr.

1838, March 1. To my bill transporting bank bills, and other services rendered bank up to this date,   -  -  $30 00

Received payment of bank, by their giving three per cent. damage on protested draft.        THOMAS A. SNOW.

The defendants called Wm. R. Keith, who, on his *voir dire*, testified, that he was called upon by the attorney to the bank, to sell out his stock, in order that he might be a witness, which he at first declined; but that previously to the commencement of this suit, he directed a sale of his stock at par by the cashier — that he transferred it to Mr. O'Brien, and took his note on time in payment — and that O'Brien was to have time in which to elect whether he would keep the stock or not — and that till then, the notes and the transfer of stock were to remain with the cashier — that Mr. O'Brien concluded to purchase, and so notified the witness — and that he did not expect to have the stock returned.

Upon this testimony, the plaintiff objected to the admission of the witness — but the objection was overruled, and the wit-

ness further testified that in February he was requested to call on the plaintiff in relation to a protested draft of his for $1000, belonging to the bank, payable out of the State, and on which the bank claimed three per cent. damage — that said Snow claimed no pay for his services, but objected to the payment of damages, saying, that he carried a great deal of money for the bank, &c. and that the claims ought to be offset — that he went to the directors, who assented to that arrangement — whereupon the witness wrote the receipt, except the words " up to this date," which were written by another director, and the receipt was then signed by the plaintiff.

It appeared in evidence, that the plaintiff failed to make the several payments of his notes, according to the contract before referred to, and that the real estate referred to in said contract was sold at public auction for $1282,50. To prove that the proceeds of the sale were applied to the payment of the notes then due, the defendants introduced, subject to objection on the part of the plaintiff, the day-book of the bank, kept by the former cashier, in which it appeared that the proceeds had been appropriated to discharge the liabilities of the plaintiff to the bank.

The defendants further proved that the books of the bank were shown the plaintiff, who made no objections except to a charge of interest. It appeared that suits had been commenced on the notes referred to in the contract of Jan. 20, 1838.

Upon this evidence, the plaintiff's counsel requested the Judge to instruct the jury that the written agreement aforesaid was, in legal effect, a promise on the part of the bank not to sue the notes, excepting the two first to be paid, until after a sale by the bank of the said real estate, and the appropriation of the proceeds, so far as they would go, to the payment of the notes — but Emery J. who tried the cause, declined giving such instructions.

In relation to the claim for transporting money and bills, he instructed the jury that the receipt was not conclusive evidence against the plaintiff, but that it was subject to explanation. If

from the evidence they were satisfied that it was the plaintiff's proposition to accept the offset of the damages as a compensation for his services, and adjust the matter in that way, the parties were competent so to do.

They would consider the time, and opportunity which the plaintiff had for deliberation and examination, that if any deceit or slight of hand as to the receipt, or fraudulent management was adopted by the directors in procuring the receipt, the jury might disregard it.

The jury returned a verdict for the defendants — which was to be set aside if the rulings of the Court, or the instructions given were erroneous.

*Holmes & Ruggles*, for the plaintiff. Keith was an incompetent witness. He should clearly discharge himself else he is incompetent. *Evans v. Eaton*, 1 Pet. C. C. R. 332. The instructions given in relation to the services rendered were indefinite. The alleged settlement was unreasonable, and every presumption is against it.

The bank is responsible for the value of the real estate at the time it was taken.

*E. & M. H. Smith*, for the defendant, cited *Ely v. Fennell*, 7 Mass. R. 25; *Phillips v. Bridge*, 11 Mass. R. 242; *Worcester v. Eaton*, 11 Mass. R. 368; *Bean v. Rose*, 12 Mass. R. 20; Phil. Ev. 38; *Union Bank v. Knapp*, 3 Pick. 96.

The opinion of the Court was delivered by

WESTON C. J. — Keith, the witness objected to, was legally examinable, upon the *voir dire*, respecting contracts, records or documents not produced at the trial, so far as they related to his interest in the case. *Miller v. Mariner's Church*, 7 Greenl. 51. Prior to his testimony, he had divested himself of his interest as a stockholder in the bank. This was done through the agency of the cashier. There was an understanding, that the purchaser might, if he elected so to do, re-transfer the stock, within a limited period. The witness however had been notified by the cashier, that the purchaser was satisfied with his bargain. As the transfer was unconditional in its

terms, the contingency, that he might again become the owner of the stock, at the option of the purchaser, was not, in our opinion, such an interest as goes to his competency.

With regard to the receipt, the evidence did not require nor justify the instruction requested, and that which was given, was quite as favorable, as the case presented would warrant. The jury were in effect instructed, that if the plaintiff acted under any misapprehension, he was not to be concluded by the receipt; and the whole merits of his claim, together with that paper, were submitted to their consideration.

The defendants were to account for moneys received by them, which were to be applied to the payment of demands, due from the plaintiff. It was competent for them to do so, by the production of their books, the entries being proved to be made by the cashier at the time, the whole account having been submitted to the inspection of the plaintiff, and he making no objection, except to the charge of interest, which being again calculated was found to be correct.

Certain real estate was conveyed to the bank, as is shown by the written agreement, " for the better security of the plaintiff's liability to the bank." This was in its nature collateral; and did not prevent the bank from making their principal security available, in any manner in their power. The presiding Judge was therefore correct, in withholding instructions requested of an opposite character.